# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

EVETTE R. TIPPETT,
          Plaintiff,

vs.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,
          Defendant.

Case No. 2:12-cv-01333-GMN-CWH

**FINDINGS AND RECOMMENDATION**

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Evette R. Tippett's application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. Ch. 7. Before the Court is Plaintiff's Motion for Reversal or Remand (#20)[1], filed on July 2, 2013, and the Commissioner's Response (#25), filed on September 20, 2013, and Plaintiff's Reply (##27-28), filed on December 9, 2013. This action was referred to the undersigned Magistrate Judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

## BACKGROUND
**I.    Procedural History**

On September 18, 2009 and September 25, 2009, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income alleging that she became disabled on April 1, 2000. (A.R. 121-130).[2] Her claims were denied initially on March 29, 2010 and upon reconsideration on November 2, 2010. (A.R. 55-66, 71-76). On December 16, 2011, Plaintiff telephonically appeared for a hearing before Administrative Law Judge ("ALJ") C.J. Sturek. (A.R. 32-54). On January 13, 2012, the ALJ issued an unfavorable decision finding that the Plaintiff has

---

[1] Refers to the Court's docket number.

[2] A.R. refers to the Administrative Record in this matter. *See* Notice of Manual Filing (#12).

not been under a disability, as defined in the Social Security Act, from April 1, 2000, through the date of his decision. (A.R. 8-26). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 28, 2012. (A.R. 1-7). On July 27, 2012, Plaintiff timely commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Motion/Application for Leave to Proceed *in forma pauperis* (#1).

## II.  The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision on January 13, 2012. (A.R. 8-26). At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2007 and has not engaged in substantial gainful activity since April 1, 2000, the alleged onset date. (A.R. 13-14, Findings 1-2). At step two, the ALJ found that Plaintiff has the following severe impairments: attention deficit hyperactivity disorder (ADHD), depression, and carpal tunnel syndrome; he also noted that Plaintiff claimed a back disorder and split personality disorder, but found they are not a medically determinable impairments or, at most, non-severe impairments. (A.R. 14-16, Finding 3). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 19, Finding 4). In doing so, the ALJ assigned B criteria limitations of moderate restriction of activities of daily living, moderate restriction in maintaining social functioning, moderate restriction in maintaining concentration, persistence, and pace, and one to two episodes of decompensation of extended duration. (A.R. 16-17).

The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) and 416.967(b) with the following nonexertional limitations: limited ability in feeling with both hands, avoid concentrated exposure to vibration, avoid all driving, moderate limitation in understanding, remembering, and carrying out detailed instructions, moderate limitation in concentrating, maintaining attention for extended periods, and keeping pace due to pain, the effects of medication, and emotional factors. (A.R. 17, Finding 5). Further, the ALJ defined moderate limitation as more than slight limitation but still able to function satisfactorily in an 8-hour

day. (A.R. 17).  He also found Plaintiff not credible to the extent her statements concerning the intensity, persistence, and limiting effects of her symptoms are inconsistent with the assigned residual functional capacity. (A.R. 18).  At step four, the ALJ found Plaintiff unable to perform her past relevant work as a grant consultant based on vocational expert testimony. (A.R. 19, Finding 6).  At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. (A.R. 19, Finding 10).  In doing so, the ALJ defined Plaintiff as a younger individual age 18-49 on the alleged onset date, with at least a limited education, able to communicate in English, and found transferable skills not material to the determination of disability. (A.R. 24, Findings 7-9).  The ALJ considered Medical-Vocational Rule 202.18, which provides a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as a general office helper and machine tender along with sedentary jobs as a security worker and finish machine operator. (A.R. 20).  Based on all of these findings, the ALJ found Plaintiff not disabled and denied her application for a period of disability and disability insurance benefits and supplemental security income.

## DISCUSSION

### I.      Judicial Standard of Review

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g).  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying or reversing a decision of the Commissioner *de novo*. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42

U.S.C. § 405(g); see also *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson,* 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).  Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence.  Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient.  *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**II.   Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden,

the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, then a determination will be made and no further evaluation is required. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The first step requires the ALJ to determine whether the individual is currently engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b) and 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits a claimant from performing basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSR") 85-28, 96-3p, and 96-4p.[3] If the individual does not have a severe medically determinable

---

[3] SSR constitute SSA's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appedix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h) and 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence such as all the symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f) and 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed as

SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965.  If the individual has the RFC to perform her past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g) and 416.920(g).  If the claimant is able to do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

### III.   Analysis and Findings

Plaintiff seeks reversal or remand of the ALJ's decision for a variety of reasons: (1) there is new evidence, (2) the opinion evidence of Kenneth McKay, Ph.D. ("Dr. McKay") is improper, (3) the ALJ did not sufficiently consider the side effects of her medication, (4) the ALJ did not properly evaluate the severity of Plaintiff's carpal tunnel syndrome, (5) the ALJ discriminated against her by citing jobs at step five, and (6) the ALJ's failed to properly consider her borderline personality disorder.

#### A.   New Evidence

Plaintiff's submitted new evidence in her Motion (#20) and Reply (#27) briefs.  Plaintiff notes that she recently received a report of a psychological examination performed by Jessica Browning, Ph.D., on October 22, 2013.  *See* Pla.'s Reply #27, 5-13.  She also notes that she submitted a subsequent application for disability insurance benefits and supplemental security income on September 25, 2012.  *See* Pla.'s Mot. #20, 7 and 22-27.  Plaintiff alleges that she received correspondence from the Commissioner that she was granted benefits on December 3, 2013, which will retroactively start as of October 2012.  *See* Pla.'s Reply #27, 1.  Plaintiff requests that the Court determine the appropriate established onset date.

The Court finds that Plaintiff's new evidence does not warrant remand.  Under 42 U.S.C. §

1  405(g), remand is warranted only if there is new evidence that is material and good cause exists for
2  the late submission of the evidence.  New evidence is material when it "'bear[s] directly and
3  substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that the new evidence
4  would have changed the outcome of the . . . determination.'"  *Bruton v. Massanari*, 268 F.3d 824, 827
5  (9th Cir. 2001) (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.
6  1984)).  Where a subsequent application is granted, the evidence may be new and material warranted
7  further consideration of the first application if the onset date comes in immediate proximity to the
8  earlier denial of benefits.  *See Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010).  Here, Plaintiff has not
9  established that the new evidence materially affects the matter in dispute.  The relevant period at issue
10  before the Court is April 1, 2000, the alleged onset date, through January 13, 2012, the ALJ's
11  decision date.  Although Plaintiff refers to a subsequent application, she failed to provide evidence of
12  the subsequent determination or ALJ decision.  *See* Pla.'s Reply.  Rather, Plaintiff provided a May 20,
13  2013 initial determination that found that she is not disabled.  *See* Pla.'s Mot. #20, 28.  Notably,
14  Plaintiff failed to provide evidence of the established onset date.
15         Even if the Court were to consider Plaintiff's statement that October 2012 was selected as the
16  established onset date for the subsequent application, there are several factors that allow the Court to
17  reconcile the ALJ's decision and subsequent application determination.  First, the passage of nine
18  months occurred between the ALJ's decision and Plaintiff's allegation of an established onset date of
19  October 2012.  In that time, Plaintiff's age changed from 44 years old as of the ALJ's decision to 45
20  years old, which may warrant a different age classification depending the RFC assigned.  Second,
21  Plaintiff notes that she obtained new medical evidence and included a report dated October 22, 2013
22  from Jessica Browning, Ph.D.  *See* Pla.'s Reply #27, 5-13.  Dr. Browning opines that Plaintiff has
23  some mental limitations due to mood disorder and psychotic disorder, but notes that Plaintiff does not
24  have dissociative identity disorder (formerly multiple personality disorder).  *Id.*  There is no
25  indication in this report and opinion that the symptoms observed on October 22, 2013 relate back to
26  the period at issue in this case.  As such, the Court cannot find that Dr. Browning's opinion is
27  material to and probative of Plaintiff's condition from April 1, 2000 through January 13, 2012.  More
28  importantly, Plaintiff has not shown good cause for failing to present the medical evidence relied on

in her subsequent application sooner. "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir.2001). As a result, the Court cannot determine, based on the record before it, that Dr. Browning's opinion and Plaintiff's allegation that her subsequent application was granted are grounds for remanding for new evidence.

### B. Dr. McKay's Opinion

Plaintiff contends that Dr. McKay should not have been allowed to submit a consultative examination opinion and the ALJ should not have considered it as opinion evidence. She also alleges that she did not ask Dr. McKay to provide a report to the Commissioner. Further, Plaintiff notes that Dr. McKay provided a subsequent consultative examination opinion in April 2013 for her subsequent application. In response, the Commissioner argues that the ALJ appropriately relied on Dr. McKay's opinion because it was based on his objective examination findings and consistent with the record as a whole. The Commissioner also contends the fact that Dr. McKay performed a consultative examination in connection with another application is irrelevant. Moreover, the Commissioner asserts that to the extent that Plaintiff is alleging that the April 2013 consultative examination is new evidence, she has failed to include it as part of the A.R. and does not address her functioning during the period at issue.

The Court finds that the fact that Dr. McKay submitted a consultative examination opinion in connection with Plaintiff's subsequent application does not warrant remand. First, Plaintiff appears to misunderstand the role of a consultative examiner. Here, Dr. McKay was requested by Commissioner to perform a consultative psychological examination. He did so on January 4, 2011 and submitted his findings and opinion to the Commissioner. (A.R. 712-720). Although Plaintiff alleges that she did not ask Dr. McKay to perform an evaluation nor submit his opinion to the Commissioner, such action is not an error requiring remand. The burden of demonstrating disability falls on Plaintiff, but the ALJ has a duty to develop the record and may order a consultative psychological examination to supplement an inadequate medical record. *See Reed v. Massanari*, 270 F.3d 838 (9th Cir. 2001). Accordingly, the ALJ was allowed to request a consultative psychological examination from Dr. McKay. Plaintiff alleges that Dr. McKay also performed a consultative examination in connection with her prior application when a different physician should have been

9

selected. The Social Security Administration (SSA) bears the responsibility for recruiting suitable physicians to perform consultative examinations and review the results of those examinations for compliance with applicable guidelines. *See* 20 C.F.R. §§ 404.1519, 416.919. Plaintiff alleges that medical experts should be rotated and therefore, the ALJ violated SSA guidelines in selecting Dr. McKay to perform the subsequent consultative examination. Although Plaintiff did not cite to it, the Court assumes that she is referring to HALLEX I-2-5-36 regarding selecting a medical expert. HALLEX provides internal guidance for processing and adjudicating claims at the Hearing, Appeals Council, and judicial review levels, but it does not carry the force of law. HALLEX I-2-5-36 deals with the selection of a medical expert to provide testimony during a hearing, but not the selection of a consultative examiner to provide a medical exam and opinion for the record. Therefore, Plaintiff has not identified a regulation that the SSA failed to comply with in utilizing Dr. McKay for the subsequent application. Notably, Plaintiff did not submit Dr. McKay's subsequent consultative examination findings and opinion and therefore, the Court cannot consider it to be new evidence. Accordingly, remand is not warranted due to the fact that Dr. McKay provided a subsequent consultative examination opinion.

Additionally, the ALJ did not err in considering Dr. McKay's opinion in finding Plaintiff not disabled. The ALJ properly considered Dr. McKay's findings in making the step two and RFC findings. Ninth Circuit law is clear that an ALJ may rely on the findings and opinion of an examining physician as substantial evidence. *See Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989). The ALJ also assigned Dr. McKay's opinion probative weight because it assesses Plaintiff as being able to function properly, stable on medication, capable of following work instructions, communicate with others, learn job tasks, and persist in a work environment. (A.R. 19). The Court finds that the ALJ's opinion evidence assessment is supported by substantial evidence. He gave specific, legitimate reasons for the weight assigned and it is consistent with other independent evidence in the record. Therefore, the ALJ's reliance on Dr. McKay's opinion is supported by substantial evidence.

### C.    Side Effects of Medication

Plaintiff alleges that the ALJ failed to properly consider the side effects of her medication when assessing her credibility. In response, the Commissioner highlights Plaintiff's reported improvement with respect to her mental impairments while on medication. For example, Plaintiff

reported that Adderall was helpful in June 2006 and she had no side effects in 2007. *See* Def.'s Resp. #25, 7. Further, the Commissioner cites four examples of times when Plaintiff denied experiencing side effects. *Id.* at 13.

One factor that an ALJ considers in making a credibility determination is the type, dosage, effectiveness, and side effects of medication. *See* SSR 96-7p; *see also* 20 C.F.R §§ 404.1529(c) and 416.929(c). If the ALJ decides to reject a claimant's testimony regarding the side effects of medication, he must give clear and convincing reasons. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Although Plaintiff makes a bare assertion that the ALJ failed to properly consider the side effects of her medication, she does not identify any medical evidence of record or specific side effects that the ALJ failed to consider. The ALJ noted in his credibility assessment that Plaintiff was non-compliant with her medication and that her symptoms were stable when she took her medication regularly. Additionally, Plaintiff made no mention of any side effects of medication during her testimony at the December 16, 2011 hearing. As the Commissioner highlighted, repeated denials by Plaintiff of any medication side effects are found in the record. (A.R. 190, 197, and 376-78). Accordingly, the Court finds that the ALJ adequately considered the effect of Plaintiff's side effects of medication in making the credibility assessment.

### D.      Severity of Carpal Tunnel Syndrome

Plaintiff contends that the ALJ did not fully consider a visit to the George Washington Hospital where she was diagnosed with carpal tunnel syndrome. (A.R. 723-727). The Commissioner argues that a reference to carpal tunnel syndrome in one medical record is not sufficient evidence that the impairment is disabling at step three. Further, the Commissioner highlights other medical evidence, including a February 2010 consultative physical examination, in which Plaintiff had normal range of motion and no evidence of deformity or swelling in her joints and extremities. The Commissioner also underscores the lack of further treatment in the record for this impairment.

The Court finds that Plaintiff has not identified any medical evidence of record that supports finding her carpal tunnel syndrome to be of disabling level severity. There are no opinions that assess Plaintiff's carpal tunnel syndrome as meeting a listing at step three. Further, the ALJ found Plaintiff's carpal tunnel syndrome to be a severe impairment at step two and assigned a related RFC limitation of limited ability to feel in both hands. (A.R. 14, 16, 17). Also, Plaintiff did not identify

any medication that she takes for the carpal tunnel syndrome.  Additionally, the ALJ noted the diagnosis of carpal tunnel syndrome from the George Washington Hospital in addition to indicating there was no follow-up treatment.  (A.R. 18).  Therefore, the Court finds no error warranting remand with respect to the severity of Plaintiff's carpal tunnel syndrome.

### E.     Step Five Jobs

Plaintiff alleges that the ALJ's citation of jobs that Plaintiff could perform at step five constitutes employment discrimination under the Federal Mine Safety and Health Act.  Specifically, Plaintiff argues that because the jobs cited at step five have wages less than what she earned doing her past relevant work as a grant consultant, they are less desirable positions and therefore, constitutes discrimination.  In response, the Commissioner contends that the Federal Mine Safety and Health Act does not apply to this case.  Additionally, the Commissioner notes that Plaintiff cited no legal authority for the proposition that the jobs identified at step five must result in wages equal to Plaintiff's past relevant work.  Further, the Commissioner argues that the step five finding is supported by vocational expert testimony and the Dictionary of Occupational Titles ("DOT").

The Court finds no remandable defect in the step five finding.  The ALJ found Plaintiff capable of performing other work in the national economy and relied on vocational expert testimony that that an individual with the same residual functional capacity and vocational factors could perform work as a general office helper and machine tender along with sedentary work as a security worker and finish machine operator.  (A.R. 20).  Plaintiff does not allege that the vocational expert's testimony conflicted with the DOT or that the jobs cited exceed her assigned RFC.  Accordingly, the Court finds that the step five finding is supported by substantial evidence and does not result in employment discrimination.

### F.     Borderline Personality Disorder

Plaintiff alleges that the ALJ failed to properly consider all of the medical evidence of record with respect to her borderline personality disorder allegation.  She claims that she was diagnosed with borderline personality disorder by Randall J. Stiles, Ph.D. ("Dr. Stiles") and the Global Assessment of Functioning ("GAF") score of 36 found by Julian Redditt, M.D. ("Dr. Redditt") supports her allegation that it is a severe impairment.  In response, the Commissioner contends that the ALJ appropriately considered the opinion evidence from Dr. Redditt and gave sufficient reasons for the

weight assigned and disregarded Dr. Stiles' opinion because it had no probative value.  Also, the Commissioner provided specific reasons for the credibility assessment that included consideration of the objective medical evidence and Plaintiff's noncompliance with treatment.

      The Court finds that the ALJ's finding that the alleged borderline personality disorder is not a severe impairment is supported by substantial evidence.  The ALJ found that the record supported a severe, medically determinable impairment of depression rather than borderline personality disorder or split personality disorder.  (A.R. 16).  In doing so, the ALJ considered mental health treatment records that included a diagnosis of depression and subjective reports by Plaintiff that she hears voices, along with objective medical findings from examinations by Verna Fabella-Hicks, M.D. ("Dr. Fabella-Hicks"), Dr. McKay, and Dr. Redditt that noted the lack of support for a diagnosis of borderline personality disorder.  (A.R. 15).  Plaintiff highlights Dr. Stiles' mention of borderline personality features in a psychosocial assessment dated June 11, 1996.  (A.R. 736-742).  However, Plaintiff submitted this evidence after the ALJ's decision and to the Appeals Counsel as part of her request for review of the ALJ's decision.  The psychosocial assessment was conducted about four years prior to Plaintiff's alleged onset date and therefore, is outside of the period at issue.  The Appeals Counsel considered this evidence and found no reason to review the ALJ's decision.  (A.R. 1-7).  The Court agrees that Dr. Stiles' assessment is insufficient evidence to warrant remand.  First, it merely notes borderline personality features, but does not cite any medical signs or symptoms to warrant finding it to be a medically determinable impairment.  Second, the three examinations that the ALJ considered occurred in 2010 and 2011 and the Court finds it reasonable that these examinations were more probative of Plaintiff's mental health condition during the period at issue than the 1996 assessment.

      Moreover, the Court finds that the ALJ's finding that Plaintiff was not credible with respect to the borderline personality allegations is supported by substantial evidence.  An ALJ's assessment of credibility is entitled to "great weight."  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).  The ALJ is required to engage in a two-step analysis to evaluate credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the individual's testimony about the severity of the symptoms only by giving

13

specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

Despite Plaintiff's allegation to the contrary, the ALJ provided clear and convincing reasons for finding her not fully credible. He noted the lack of persistent mental health treatment and fact that Plaintiff appeared to seek treatment only when she ran out of medication. In addition, the ALJ highlighted treatment notes that indicated improvement in her mental health while compliant with medication. Further, the ALJ relied on opinions from Dr. Fabella-Hicks and Dr. McKay that Plaintiff's mental limitations were not of a disabling level of severity. Therefore, the Court finds that the ALJ's credibility assessment sufficient addressed Plaintiff's alleged symptoms from mental impairments and is supported by substantial evidence.

Similarly, the Court finds that the ALJ's opinion evidence assessment is supported by substantial evidence. As noted above, Dr. Stiles' 1996 assessment was not submitted to the ALJ, but rather to the Appeals Counsel. Accordingly, the ALJ did not have an opportunity to address Dr. Stiles' findings. However, Dr. Stiles did not provide an opinion as to how Plaintiff's mental impairments limit her ability to work. Accordingly, it does not need to be weighed in comparison to the other opinion evidence of record. Further, the Appeals Counsel considered it and found no reason to review the ALJ's decision. In addition, the Court finds that the ALJ's assignment of some weight to Dr. Redditt's opinion is supported by substantial evidence. Dr. Redditt conducted a psychiatric evaluation of Plaintiff on July 19, 2011 and noted that she has a GAF of 36 (A.R. 729-733). The ALJ noted that Plaintiff has a GAF score of 75 when taking her medication regularly and found that score to be a more reliable indicator of her mental limitations. Additionally, Dr. Redditt notes that Plaintiff reports a diagnosis of borderline and split personality, but likely misunderstands that diagnosis. More importantly, a GAF score does not directly correlate to the severity requirements of SSA listing and is

not determinative of a RFC's accuracy.  *See, e.g., McFarland v. Astrue*, 288 Fed.Appx 357, 359 (9th Cir. 2008).  Accordingly, the Court finds that the step two, credibility, and opinion evidence assessments are supported by substantial evidence with respect to the ALJ's consideration of the alleged borderline personality disorder.

### IV.     Conclusion

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion.  Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is supported by substantial evidence and articulates reasons for the findings that satisfy the requisite legal standards.

Based on the foregoing and good cause appearing therefore,

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal or Remand (#20) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#25) be **granted**.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.,* 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 10th day of April, 2014.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**